THE PIONEER MUTUAL CASUALTY CO. OF OHIO, APPELLANT, *v.*
QUALLS ET AL., APPELLEES.

(No. 538—Decided May 23, 1957.)

*Messrs. McKee, Schwer & Taggart,* for appellant.
*Mr. William E. Bailey* and *Mr. Herman O. Abele,* for appellees.

*Per Curiam.* This is an appeal on questions of law and fact from a judgment rendered in favor of the defendants, by the Court of Common Pleas of Clark County. The matter is submitted to this court on the transcript of the record taken below, together with certain depositions not introduced in the trial court.

Plaintiff, The Pioneer Mutual Casualty Company of Ohio, filed a petition in which it prayed for a declaratory judgment and for the cancellation of a contract of insurance which it had issued on February 2, 1955, to the defendant Delbert Qualls, covering a certain automobile owned by him. Plaintiff based its right to cancellation on two grounds: Breach of warranty by the defendant in the application for insurance, and false and

fraudulent representations and withholding of material facts, for the purpose of inducing the plaintiff to issue the contract of insurance. The defendant Qualls, in his answer, admitted certain immaterial allegations contained in the petition, and alleged that subsequent to issuing the policy of insurance the insured automobile had been involved in a collision while being operated by his son who was also covered by said contract of insurance; and that the insurance company was obligated to defend the action growing out of the collision, and to pay the damages up to the limits of the policy. He then interposed a general denial. There were other interested parties named as defendants, who filed proper pleadings.

A proper tender of the premium paid is shown by evidence to the effect that, in a letter sent by the plaintiff company to the insured stating it was voiding the policy, the plaintiff offered to return the premium, and, upon filing the petition, the plaintiff paid into court a sum of money representing the amount of the premium, with interest. The insured, claiming the benefit of the contract of insurance, did not accept the tender.

We have no difficulty in finding that the wife was the agent of the insured and that the insured would be bound by her acts. The wife signed the name of the insured to the application at the suggestion of the agent.

The two major issues presented may be epitomized as follows: (1) Plaintiff contends that there was a breach of warranty by the insured in stating his answer to item 5 on the application. (2) There were various false and fraudulent representations and a withholding of material facts from the plaintiff on which defendant relied, for the purpose of inducing the plaintiff to issue the contract of insurance.

The reverse side of the application contained blank spaces which the agent filled in with certain information secured by him. The reverse side of the application, and the information contained thereon, cannot be considered a part of the contract of insurance and is not embraced in the warranty.

Item 5 of the application is: "Has automobile insurance ever been declined, cancelled or has renewal been refused? Answer, No." Item 7-a of the application is: "Have you or

any driver of the automobile had any automobile accidents during the last three years? Answer, Yes.''

The evidence shows that the agent of the plaintiff conversed with the wife of the insured, who stated to him that one reason she wanted to change the insurance was to secure coverage for their son; that the son was not covered by their then policy; that the agent promised coverage for the son; and that when she gave an affirmative answer to item 7-a a lengthy conversation took place between the wife and the agent, in which she related the details of an accident in which the son had been involved. The evidence shows that the son had been involved in two other accidents of minor importance, and the insured in one accident of minor importance. These accidents were inconsequential from the standpoint of damages. There was no mention of these other accidents. The agent testified that he inquired about other accidents and the wife stated that there were none. The wife testified, in direct contradiction to the agent, that the agent never inquired about other accidents, but interrogated her at length respecting the major accident in which the son was involved. She informed the agent that as a result of this accident the son was required to surrender his driver's license. The agent admitted receiving complete information with respect to this accident, and the suspension of the son's driver's license.

The plaintiff contends that the answer given by the insured to item 5 was untrue in that the son had been excluded from coverage in a policy of insurance formerly issued by another company, and that when the insured stated that insurance had never been declined, cancelled or renewal refused, the insured stated an untruth. The record shows that the insured, Delbert Qualls, had never had insurance declined, cancelled or renewal refused.

It certainly is not clear whether the son's exclusion from coverage in a former policy is embraced in this question. Item 5 seems to be directed to the applicant, while items 6, 7 and 7-a are directed to the applicant and any other driver. Where there is an ambiguity in an insurance contract and an interpretation is required, the contract will be construed most favorably to the insured. *Home Indemnity Co.* v. *Village of Ply-*

*mouth,* 146 Ohio St., 96, 101, 64 N. E. (2d), 248; *Duncan* v. *John Hancock Mutual Life Ins. Co.,* 137 Ohio St., 441, 445, 31 N. E. (2d), 88; 22 Ohio Jurisprudence, 340, Section 185. Accordingly, we conclude that the refusal to include a member of the insured's family in an insurance policy upon renewal does not constitute a declination, cancellation or refusal of renewal of said policy to the insured within the meaning of item 5 of the policy under consideration. The question being properly answered, there was no breach. Item 7-a was truthfully answered and there was no breach.

Did plaintiff make out a case of false representation? On this issue the plaintiff carried the burden to prove all the elements of fraud by clear and convincing proof. 22 Ohio Jurisprudence, 892, Section 794. There is a conflict in the evidence, and we cannot say that plaintiff has sustained the burden in proving all the elements of fraud. In *Cross* v. *Ledford,* 161 Ohio St., 469, 120 N. E. (2d), 118, the second paragraph of the syllabus is as follows:

"In order to maintain an action to rescind a contract on the ground that it was procured by fraudulent representations, it must be proved by clear and convincing evidence (1) that there was actual or implied representations of material matters of fact, (2) that such representations were false, (3) that such representations were made by one party to the other with knowledge of their falsity, (4) that they were made with intent to mislead a party to rely thereon, and (5) that such party relied on such representations with a right to rely thereon."

After the agent had secured the application for insurance, and before the policy was issued, he made an independent investigation in order to determine whether the insured was a good risk. The agent sought information from several different sources. We conclude that the plaintiff has not proved by clear and convincing proof that the insured, through his wife, made false representations with intent to mislead the plaintiff, and that it relied solely on such false representations.

*Judgment for defendants.*

Hornbeck, P. J., Wiseman and Crawford, JJ., concur.